**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 4:11-CR-00125** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **RONNY GETGEN,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Presently before the court is a motion (Doc. 28) to suppress evidence filed by

defendant Ronny Getgen ("Getgen").  Getgen contends that his Fourth Amendment

rights were violated by the improper issuance and execution of two search

warrants.  Getgen requests that the court suppress all physical evidence recovered

pursuant to the search warrants and a statement allegedly made by Getgen during

the execution of the first warrant.  For the following reasons, the court will deny the

motion.

## I.   Findings of Fact[1]

On August 7, 2009, Williamsport Bureau of Police Agent Ronald Bachman

("Agent Bachman") and Lycoming County Detective William Weber ("Detective

Weber") met with Jason Debloois ("Debloois"), an employee of Publishers Service

Associates, Inc. ("Publishers Service").  (Hr'g Tr. at 7-8).  Debloois told Agent

Bachman and Detective Weber that a Publishers Service email had been

---

[1] These findings are based on evidence presented at the October 14, 2011,
hearing on the motion, and they reflect the court's assessment of the credibility of
the testimony provided.  Citations to the October 14, 2011, hearing transcript are
abbreviated throughout as "Hr'g Tr."

intercepted and forwarded to an employee not privy to the email.[2]  (Id. at 8).

Debloois gave Agent Bachman and Detective Weber a copy of the email and the

captured Internet Protocol ("IP") address of the cyber-intruder.  (Id. at 8-9).  These

materials demonstrated that a computer using IP address 68.63.97.95 intercepted

and forwarded a Publishers Service email on August 3, 2009.  (Id. at 8-9; Gov't Ex.

A).  After further investigation, Agent Bachman determined that IP address

68.63.97.95 belonged to Comcast Corporation ("Comcast").  (Hr'g Tr. at 10; Gov't

A).  The header of the forwarded email also indicated that the cyber-intruder used a

virus scan program known as AVAST!.  (Hr'g Tr. at 13-14; Gov't Ex. A).

On August 11, 2009, an individual using the same  IP address unsuccessfully

attempted on two separate occasions to access Publishers Service's computer

system through the internet portal logmein.com.  (Hr'g Tr. at 10-11; Gov't Ex. A).

Debloois told Agent Bachman that Ronny Getgen was one of four individuals who

knew that this portal could be used to access Publishers Service's computer system

and that Getgen had recently been terminated.  (Hr'g Tr. at 11-12; Gov't Ex. A).

Debloois explained that Publishers Service severed Getgen's computer privileges at

the time of his termination and that the logins had been changed to prevent

intrusion.  (Id.)  Debloois also told Agent Bachman that Getgen used Comcast as his

---

[2]  Getgen objected to the introduction of hearsay statements at the hearing.
(See, e.g., id. at 8).  Hearsay, however, is admissible at pre-trial suppression
hearings at the judge's discretion.  United States v. Tussell, 441 F. Supp. 1092, 1097
(M.D. Pa. 1977); see also  United States v. Matlock, 415 U.S. 164, 172-75 (1974).  The
court finds all referenced hearsay statements to be sufficiently reliable.

email server and AVAST! as his virus scan program.  (Hr'g Tr. at 13-14; Gov't Ex.

A).  On August 12, 2009, Agent Bachman served a search warrant on Comcast to

obtain subscriber information on IP address 68.63.97.95.  (Hr'g Tr. at 14; Gov't Ex.

A).  On August 25, 2009, Comcast responded to the warrant and stated that Getgen's

residence at 226 Westland Avenue, South Williamsport, Pennsylvania, used IP

address 68.63.97.95 on the dates of the intrusions.  (Id.)

Based on the above information, Agent Bachman prepared an Application

for Search Warrant and Authorization with an affidavit of probable of cause.  (Hr'g

Tr. at 14-15; Gov't Ex. A).  First Assistant District Attorney Kenneth Osokow

("Osokow") approved the application.  (Hr'g Tr. at 15).  Agent Bachman then

presented the application to Magistrate Judge Allen Page ("Judge Page").  (Hr'g Tr.

at 17).  On September 3, 2009, Judge Page issued a search warrant ("SW-61-09")

authorizing the search and seizure of "EVIDENCE OF UNAUTHORIZED ACCESS

TO THE COMPANY NETWORK OF PUBLISHERS SERVICE ASSOCIATES."

(See Gov't Ex. A).  In the section of the warrant designated for the specific

description of the premises and/or person to be searched, the warrant stated "ALL

COMPUTERS AND ELECTRONIC MEDIA LOCATED AT 226 WESTLAND

AVENUE IN SOUTH WILLIAMSPORT, PA. TO BE FORENSICALLY

EXAMINED OFF-SITE AT A LATER TIME."  (Id.)

Later that day, Agent Bachman executed the warrant with Detective Weber

and several other police officers.  (Hr'g Tr. at 19).  Agent Bachman testified that he

searched the residence for computers and electronic media and seized five

computers, one external hard drive, 59 CDs/DVDs, and five thumb drives. (Id.) During the execution of the warrant, Getgen, without questioning or prompting by the officers, noted that there would be software on one of his computers from Publishers Service. (Id. at 20). Agent Bachman responded that Getgen was not being accused of stealing software and that he was not interested in pirated music, but that he could not overlook or ignore any potential criminal issues arising from the discovery of child pornography. (Id.) Getgen told Agent Bachman that there would be some "borderline" images on the computers. (Id. at 24).

On September 21, 2009, Agent Bachman conducted a forensic examination on the seized items. (Id. at 21, Gov't Ex. B). Agent Bachman sought only to look for evidence of computer trespass. (Hr'g Tr. at 20-21). However, during the course of his forensic examination, Agent Bachman discovered an image that appeared to be child pornography and immediately stopped his examination. (Hr'g Tr. at 22-23, Gov't Ex. B). Two other law enforcement officials reviewed the image and concurred in his assessment that the image constituted child pornography. Consequently, Agent Bachman prepared a second Application for Search Warrant and Authorization with an affidavit of probable of cause. (Id.) The District Attorney approved the application and then Agent Bachman presented the application to Judge Page. (Hr'g Tr. at 23-24). On October 21, 2009, Judge Page issued a second search warrant ("SW-71-09") authorizing the search and seizure of "ANY AND ALL IMAGES OF CHILD PORNOGRAPHY INCLUDING DIGITAL IMAGES AND VIDEOS." (Gov't Ex. B). In the section designated for the specific

4

description of the premises and/or person to be searched the warrant stated "HP DESKTOP COMPUTER BEARING SERIAL NUMBER USU4160992, A WHITE HOME MADE COMPUTER TOWER WITH NO BRANDING, A NET VISTA DESKTOP BEARING SERIAL NUMBER 8303HUEK114630, AN HP LAPTOP BEARING SERIAL NUMBER TW15103038, A COMPAQ LAPTOP BEARING SERIAL NUMBER CNF3500KJL, AN ADDONICS HARD DRIVE ENCLOSURE WITH 80 GB HARD DRIVE, 59 CD/DVDS, AS WELL AS 5 THUMB DRIVES CONFISCATED ON SEPTEMBER 3, 2009 FROM RON GETGEN."  The execution of SW-71-09 led to the discovery of additional evidence ultimately resulting in Getgen's federal indictment.[3]

## II.    **Procedural History**

On April 14, 2011, a federal grand jury returned a two-count Indictment charging Getgen with violations of 18 U.S.C. §§ 2252A (a)(2)(B) and (a)(5)(B) concerning the receipt and possession of material containing child pornography. (Doc. 1).  Getgen pled not guilty at his initial appearance on April 15, 2011.  (Doc. 7). Getgen filed the instant motion (Doc. 28) to suppress on September 9, 2011.  The court conducted an evidentiary hearing on October 14, 2011.  The motion has been fully briefed and is now ripe for disposition.  (See Docs. 28, 32).

---

[3]  Agent Bachman also found at least one copy of the misappropriated email during the forensic examinations.  (See Hr'g Tr. at 38).

### III.   <u>Discussion</u>

The Fourth Amendment of the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.  Getgen asserts seven distinct Fourth Amendment violations stemming from the issuance and execution of the two search warrants. With respect to SW-61-09, Getgen claims that: (1) the executing officers exceeded the scope of the warrant by seizing his computers and electronic media; (2) no probable cause existed to issue the warrant; (3) Agent Bachman intentionally misled Judge Page as to the reliability of the information contained in his affidavit of probable cause; (4) the warrant failed to describe with particularity the property to be searched and seized; (5) the search and seizure authorized by the warrant was overbroad; and (6) Agent Bachman executed the warrant in flagrant disregard of the terms of the warrant itself and in bad faith.  (See Doc. 28, at 5-16). With respect to SW-71-09, Getgen contends that, without reference to the evidence illegally obtained pursuant to SW-61-09, the affidavit of probable cause for the warrant fails to establish probable cause.  (See id. at 17-21).  The court holds that the issuance and execution of SW-61-09 and SW-71-09 did not violate the Fourth Amendment of the United States Constitution and that Agent Bachman acted in good-faith in executing the warrants.  Accordingly, the physical evidence recovered pursuant to the warrants and the statement allegedly made by Getgen will not be suppressed.

A.   **Alleged Fourth Amendment Violations**

1.   **Unauthorized Seizure: SW-61-09**

Getgen contends that the executing officers exceeded the scope of the warrant by seizing Getgen's computers and electronic media. (Doc. 28, at 6-8). Getgen argues that although the executing agents could search "[a]ll computers and electronic media located at 226 Westland Avenue in South Williamsport, Pa[,]" the warrant only allowed the executing officers to search and seize "evidence of unauthorized access to the company network of Publishers Service Associates." (Doc. 28, at 7, 8 (quotations omitted)).

The court finds that Agent Bachman did not exceed the authority of SW-61-09 by seizing Getgen's computers and electronic media. Getgen's position is premised on how Agent Bachman drafted SW-61-09. Agent Bachman identified the items to be searched and seized as "EVIDENCE OF UNAUTHORIZED ACCESS TO THE COMPANY COMPUTER OF PUBLISHERS SERVICE ASSOCIATES." (Gov't Ex. A). For the specific description of the premises to be searched Agent Bachman stated "ALL COMPUTER AND ELECTRONIC MEDIA LOCATED AT 226 WESTLAND AVENUE IN SOUTH WILLIAMSPORT, PA. TO BE FORENSICALLY EXAMINED OFF-SITE AT A LATER TIME." (Id.) The Third Circuit has stated that "phrases in a search warrant must be read in context and not in isolation." United States v. Johnson, 690 F.2d 60, 64 (3d Cir. 1982). It is plainly evident from the context of the entire warrant that SW-61-09 provides the executing officers with the authority to seize the computers and electronic media

7

for a period of time to allow them to conduct forensic examination "off-site at a later time."

Courts often distinguish "a mere technical mistake" from "defects of constitutional magnitude." <u>United States v. Hattrick</u>, 182 Fed. Appx. 649, 651 (9th Cir. 2006) (holding that the omission of the words "and to seize the same" at the end of a list of property to be searched was a mere technical mistake"); <u>see</u> <u>also</u> <u>Groh v. Ramirez</u>, 540 U.S. 551, 558 (2004) (distinguishing "a mere technical mistake or typographical error" from the failure to describe the items to be seized at all). Furthermore, courts may reference an affidavit for clarification when the warrant contains an ambiguity or clerical error, even if the affidavit is not formally incorporated by reference in the warrant.  <u>Doe v. Groody</u>, 361 F.3d 232, 240 (3d Cir. 2004); <u>see</u> <u>also</u> <u>United States v. Wallace</u>, Criminal No. 1:09-CR-0179, 2009 WL 3182903, at *2 (M.D. Pa. Sept. 30, 2009).  The affidavit removes all ambiguity from SW-61-09, explicitly stating that "[a] search warrant is hereby requested to *seize all computers and electronic media* from 226 Westland Avenue in South Williamsport, Lycoming County, Pennsylvania."  (<u>See</u> Gov't Ex. A (emphasis added)). Accordingly, the executing officers acted within the scope of the warrant when they seized computers and electronic media at Getgen's residence.

### 2.   **Probable Cause: SW-61-09**

Getgen asserts that SW-61-09 was issued without probable cause.  (Doc. 28, at 9-10).  A warrant must be supported by probable cause that the area to be searched contains evidence of criminal activity.  U.S. CONST. amend. IV.  The Supreme Court

has stated that "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." <u>Illinois v. Gates</u>, 462 U.S. 213, 232 (1983). The magistrate judge must make a practical, common-sense determination based on the facts set forth in the affidavit that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." <u>Id.</u> at 238. In light of the traditional preference for the warrant process, courts apply a deferential standard in reviewing a judge's probable cause determination, requiring only that the issuing judge "had a substantial basis for . . . concluding that a search would uncover evidence of wrongdoing."[4] <u>Id.</u> at 236 (citation, brackets, and quotations omitted); <u>see also</u> <u>United States v. Williams</u>, 3 F.3d 69, 72 (3d Cir. 1992). In other words, it is not the role of the reviewing court to perform a *de novo* review regarding the sufficiency of the affidavit. <u>See</u> <u>Gates</u>, 462 U.S. at 236.

Getgen attacks Judge Page's probable cause determination on four grounds alleging that: (1) the warrant failed to establish the elements of the alleged crime; (2) law enforcement personnel failed to corroborate Debloois' statements; and (3) the warrant did not explicitly state that the police would find evidence of computer

---

[4] Courts are restricted to the "four corners of the warrant application" in making this determination. <u>United States v. Burton</u>, Criminal Action No. 07-640-1, 2008 WL 4710167, at *5 (E.D. Pa. Oct. 27, 2008) (citing <u>United States v. Jones</u>, 994 F.2d 1051, 1055 (3d Cir. 1993)).

trespass by searching Getgen's computers and electronic media.  (Id., Hr'g Tr. 45-50).

SW-61-09 alleged Getgen committed computer trespass in violation of Title

18, Section 7615 of the Pennsylvania Consolidated Statutes ("Section 7615 or §

7615").  (See Gov't Ex. A).  Section 7615 states:

> (a) Offense defined.--A person commits the offense of computer
> trespass if he knowingly and without authority or in excess of given
> authority uses a computer or computer network with the intent to:
>
> (1) temporarily or permanently remove computer data, computer
> programs or computer software from a computer or computer
> network;
>
> (2) cause a computer to malfunction, regardless of the amount of time
> the malfunction persists;
>
> (3) alter or erase any computer data, computer programs or computer
> software;
>
> (4) effect the creation or alteration of a financial instrument or of an
> electronic transfer of funds; or
>
> (5) cause physical injury to the property of another.

18 Pa. Cons. Stat. § 7615.  Agent Bachman stated in the affidavit of probable cause

for SW-61-09 that he learned from Debloois that someone accessed Publishers

Service's computer system, intercepted an email, and then sent the email to a

person not privy to it from IP address 68.63.97.95.  (See Gov't Ex. A).  These alleged

actions constitute "removal" of "computer data" under § 7615 because sending the

email involved both routing the email through Publishers Service's email server

and the World Wide Web and changing the location of the email within Publishers

Service's computer system.[5]  See ADAM I. COHEN & DAVID J. LENDER, ELECTRONIC

DISCOVERY: LAW AND PRACTICE, § 7.03 (2009); (Hr'g Tr. at 28-30).  It is also clear from

the affidavit that no one had authority to access Publishers Service's email server

for the purpose of intercepting and forwarding an email to an employee not privy to

it.[6]  (See Gov't Ex. A).  Thus, SW-61-09 adequately alleged computer trespass.

Getgen's second contention is similarly without merit.  The affidavit of

probable cause for SW-61-09 sufficiently connected the crime to an IP address at

Getgen's address.  The affidavit listed numerous facts that linked Getgen's

residence to the crime including that: (1) the intruder used Comcast IP address

68.63.97.95 for all three intrusions and AVAST! as his or her virus scan program; (2)

---

[5]  The term "computer data" is defined in Chapter 76 (Computer Offenses) of
the Pennsylvania Criminal Code as
>     [a] representation of information, knowledge, facts, concepts or
>     instructions which is being prepared or has been prepared and is
>     intended to be processed, is being processed or has been processed in a
>     computer or computer network and may be in any form, whether
>     readable only by a computer or only by a human or by either, including,
>     but not limited to, computer printouts, magnetic storage media, punched
>     card or stored internally in the memory of the computer.
18 PA. CONS. STAT. § 7601.  This broad definition encompasses email.
The statute does not define "remove" and the court could find no relevant
legislative history on the meaning of the term.  The court will therefore construe
"remove" in accordance with its fair import as "to change the location, position,
station, residence of." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY, 1053 (11th ed.
2009); see also 18 PA. CONS. STAT. § 105 (stating principles of statutory construction).
This definition encompasses intercepting an email and sending that email to
another person.

[6]  At oral argument, Getgen conflated permission to use or access a computer
system with permission to intercept and forward an email to an individual not privy
to it. (See Hr'g Tr. at 48).  Permission to use a computer or access a computer
system is quite distinct from permission to intercept and forward an email.

11

Getgen used Comcast as his email server and AVAST! as his virus scan program; (3) Publishers Service had recently fired Getgen from its computer technology department; and (4) Getgen was one of four individuals who knew of the portal entry through logmein.com. (See Gov't Ex. A). Although Agent Bachman obtained this information from Debloois, the Supreme Court has noted "that if an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—we have found rigorous scrutiny of the basis of his knowledge unnecessary." Gates, 462 U.S. at 233-34 (citation omitted). The context of the affidavit makes evident that the basis of Debloois's knowledge is his employment at Publishers Service.[7] (See Gov't Ex. A). Furthermore, the affidavit states that Agent Bachman corroborated that the IP address belonged to Getgen's residence at 226 Westland Avenue in South Williamsport, Pennsylvania, by serving a search warrant on Comcast. (Id.) Thus, Judge Page had ample basis for concluding that a search of the computers and electronic media located at 226 Westland Avenue, South Williamsport, Pennsylvania, would uncover evidence of computer trespass.

---

[7] At oral argument, Getgen contended that Debloois' veracity was suspect because Publishers Service had just fired Getgen. (Hr'g Tr. at 45-46). The court rejects this conclusory assertion. It is unclear why Debloois would risk significant criminal and civil liability merely because his employer recently fired a co-worker. See, e.g., 18 Pa. Cons. Stat. § 4906. Moreover, contrary to Getgen's repeated assertions, Debloois was not a confidential informant; the affidavit openly named him as the source of the information.

Getgen finally argues that no probable cause existed because the affidavit did not explicitly state the police would find evidence of computer trespass by looking at his computers and electronic media. (See Hr'g Tr. at 48-49). This argument is inconsistent, however, with the nontechnical, common-sense approach to evaluating the sufficiency of an affidavit as articulated in Gates. 462 U.S. at 235-36. The Supreme Court has emphasized that affidavits are often drafted by "nonlawyers" and the "[t]echnical requirements of elaborate specificity . . . have no proper place in this area." Id. at 235 (quotations and citations omitted). It is clear from the nature of the alleged crime—computer trespass involving intercepting and forwarding an email—and the context of the affidavit that any evidence of wrongdoing would be found on the computers or electronic media located at Getgen's residence.[8] Accordingly, Judge Page had probable cause to issue SW-61-09.

### 3.   Intentional Misrepresentations: SW-61-09

Getgen contends that Agent Bachman intentionally misled Judge Page as to the reliability of the information in the affidavit of probable cause for SW-61-09. (Doc. 28, at 10-11). A court must suppress evidence acquired pursuant to a search warrant "issued on the basis of a false statement that was both material to the finding of probable cause and made either knowingly and intentionally or with

---

[8] For almost identical reasons, Agent Bachman did not need to explain in the affidavit of probable cause how email works or the technical reasons why evidence of an intercepted and forwarded email would be found on the computer and electronic media of the intruder.

reckless disregard for the truth." <u>United States v. Brown</u>, 631 F.3d 638, 642 (3d Cir. 2011) (citing <u>Franks v. Delaware</u>, 438 U.S. 154, 155-56 (1978)).  Getgen argues that in paragraph three of the affidavit of probable cause for SW-61-09, Agent Bachman misleadingly implied that Debloois statements were independently verified.

As an initial matter, the court notes that it is the defendant's burden to establish by a preponderance of an evidence that the affiant knowingly and intentionally or with reckless disregard for the truth included a false statement in the affidavit of probable cause.  <u>Franks</u>, 438 U.S. at 156.  In the instant case, Getgen presented no evidence on the issue at the suppression hearing and the record is devoid of any evidence supporting that conclusion.  Moreover, when the affidavit of probable cause for SW-61-09 is read as a whole, it is evident that Agent Bachman learned the information referenced in paragraph three of the affidavit from Debloois.  The Third Circuit has stated that affirmative justification to "believe something to be true" may come from information provided by a third party. <u>Brown</u>, 631 F.3d at 648.  Thus, the court holds that Agent Bachman did not knowingly and intentionally or with reckless disregard for the truth include a material false statement in the affidavit of probable cause for SW-61-09.

### 4.   **Particularity: SW-61-09**

Getgen contends that SW-61-09 did not state with particularity the items to be searched and seized.  (Doc. 28, at 11-13).  The Fourth Amendment requires that search warrants describe with particularity the persons or places to be searched and the property to be seized.  U.S. CONST. amend. IV; <u>see also</u> <u>Marron v. United</u>

14

States, 275 U.S. 192, 196 (1927).  The particularity requirement serves two distinct purposes: (1) it memorializes exactly what the judge intended to be searched and seized and (2) it "informs the subject of the search of the lawful authority of the executing officer, his need to search, and the limits of his power to search." United States v. Tracey, 597 F.3d 140, 146 (3d Cir. 2010) (citations and quotations omitted). In other words, the particularity requirement prevents general searches and seizures.  United States v. Christine, 687 F.2d 749, 752 (3d Cir. 1982).

In the instant case, SW-61-09 stated in both specific and inclusive terms the items to be searched and seized—all computers and electronic media located at 226 Westland Avenue, South Williamsport, Pennsylvania—in order to look for evidence of computer trespass.  (See Gov't Ex. A).  These terms left no room for interpretation by the executing officers.  See Tracey, 597 F.3d at 154 (noting that general warrants contain vague categories of items); see also United States v. Ninety–Two Thousand Four Hundred Twenty–Two Dollars and Fifty–Seven Cents, 307 F.3d 137, 149 (3d Cir .2002) (holding that a warrant that allowed the seizure of, inter alia, "[c]omputers, computer peripherals, related instruction manuals and notes, and software" was not general).  Although broad, SW-61-09 did not permit general exploratory rummaging.  See Christine, 687 F.2d at 753 (stating that a warrant cannot be invalidated as a general warrant unless it "vests the executing officers with unbridled discretion to conduct an exploratory rummaging").  Thus, SW-61-09 is sufficiently particular.

### 5.   <u>Overbroad: SW-61-09</u>

Next, Getgen maintains that SW-61-09 was overbroad.  (<u>See</u> Doc. 28, at 13-15).  A warrant is overbroad if it authorizes the executing officers to search places for which there is no probable cause to believe evidence of the alleged crime will be found.  <u>Maryland v. Garrison</u>, 480 U.S. 79, 84 (1987) (noting that a search must "be carefully tailored to its justifications").

Getgen argues that SW-61-09 should only have permitted the executing officers to search for evidence relating to Getgen's use of his computer to access the internet, and, therefore, it was unnecessary to search any of his computer files on either his computer or other electronic media.  (Doc. 28, at 13).  As Getgen noted, however, remotely accessing another computer without authorization does not constitute computer trespass under § 7615.[9]   Instead, the key evidence of computer trespass related to the intercepted and forwarded email, which would likely leave evidence in the form of a file or other type of data in the computer of the intruder.  Furthermore, the search could not be limited to certain dates or file extensions because computer files can be easily disguised.  <u>See, e.g.</u>, <u>United States v. Highbarger</u>, 380 Fed. App'x 127, 130 (3d Cir. 2010); <u>United States v. Crespo-Rios</u>, 645 F.3d 37, 43 (1st Cir. 2011) (citing cases); <u>United States v. Hill</u>, 322 F. Supp. 2d 1081, 1091 (C.D. Cal. 2004) <u>aff'd</u>, 459 F.3d 966 ("Criminals will do all they can to conceal contraband, including the simple expedient of changing the names and

---

[9]   The court notes, however, that accessing a computer without authorization is also a crime in Pennsylvania.  <u>See</u> 18 PA. CONS. STAT. § 7611.

extensions of files to disguise their content from the casual observer . . . There is no

way to know what is in a file without examining its contents, just as there is no sure

way of separating talcum from cocaine except by testing it."). The risk of disguised

files was especially cogent in the instant case when Getgen worked with computers

professionally. (See Gov't Ex. A). Accordingly, the court rejects Getgen's argument

that SW-61-09 was overbroad.[10]

### 6.   Bad-Faith Execution: SW-61-09

Getgen next advances that the evidence recovered pursuant to SW-61-09

must be suppressed because Agent Bachman flagrantly disregarded the terms of

the warrant in bad faith. (Doc. 28, at 15-16). Blanket suppression of all evidence

---

[10] Although not raised by Getgen, the court notes that the use of the term "electronic media" may have caused SW-61-09 to be overbroad. Assuming *arguendo* the issue had been raised by Getgen and the court concluded that SW-61-09 was overbroad, nonetheless the court would deny Getgen's motion to suppress. A court may cure an overly broad warrant by "striking from [the] warrant those severable phrases and clauses that are invalid for lack of probable cause or generality and preserving those severable phrases and clauses that satisfy the Fourth Amendment." Christine, 687 F.2d at 754. Agent Bachman discovered the digital image of suspected child pornography on the hard drive for Getgen's HP Compaq computer. (See Gov't Ex. B). Agent Bachman had probable cause to believe evidence of computer trespass would be found on Getgen's computers and conducted the search pursuant to a valid warrant. Thus, the term electronic media could be redacted from SW-61-09 without effecting the validity of the issuance of SW-71-09. Moreover, evidence seized pursuant to an overly broad warrant is not suppressed if the good-faith exception to the Fourth Amendment exclusionary rule applies. Ninety–Two Thousand Four Hundred Twenty–Two Dollars and Fifty–Seven Cents, 307 F.3d at 149. As explained below, the good-faith exception would likewise cure any defect in the issuance of SW-61-09 in the instant case. See infra Section III.B.

seized is required if the executing officers flagrantly disregard the terms of the

warrant in bad faith.  See United States v. American Investors of Pittsburgh, Inc.,

879 F.2d 1087, 1104 (3d Cir. 1989); United States v. Gawrysiak, 972 F. Supp. 853, 864

(D.N.J. 1997); see also United States v. Shi Yan Liu, 239 F.3d 138, 140-141 (2d Cir.

2000).  Getgen asserts that Agent Bachman executed the warrant in bad-faith

because he intended to search for evidence of illegal software, pirated music, and

pornography during the forensic examination.  (Doc. 28, at 16).  Specifically, Getgen

notes that Agent Bachman told him that "he would not take any action with regards

to the evidence of software which belonged to Publisher's Service Associates or

pirated music, but that if illegal pornography was found it would not be forgiven."

(Doc. 28, at 15-16 (quotations omitted)).

        The court carefully scrutinized Agent Bachman's testimony and concludes

that he executed SW-61-09 in good-faith.  Agent Bachman explained at the

evidentiary hearing that he had to examine all of Getgen's computer files and data

to find evidence that the email was routed through one of his computers.  (Hr'g Tr.

at 34).  Agent Bachman elaborated that the examination of every file was necessary

because emails can be saved under any extension, including a JPEG image file, and

dates can be changed.  (See id. at 40-44).  The court finds credible Agent Bachman's

testimony that he only intended to search for evidence of computer trespass during

the execution of SW-61-09.  (See Hr'g Tr. at 20-21).  Agent Bachman's statement

about software, pirated music, and child pornography does not prove he intended to

conduct a general search.  Instead, the court finds that Agent Bachman's statement

18

was an extemporaneous response to Getgen's comment that one of his machines

contained software from Publishers Service.  (See Hr'g Tr. at 20).  Agent Bachman's

intention to adhere to the terms of SW-61-09 is also demonstrated by the fact that

when he actually discovered child pornography during his forensic examination, he

stopped the search and obtained a second search warrant.  (See Hr'g Tr. at 22;

Gov't Ex. B).  Thus, the court finds that Getgen acted in good-faith and executed

the warrant in accordance with its plain terms.

### 7.   <u>Probable Cause: SW-71-09</u>

Finally, Getgen asserts that without the physical evidence and statement

obtained from the illegal execution of SW-61-09, the affidavit for SW-71-09 lacks

sufficient probable cause to support the issuance of the warrant.  (Doc. 28, at 17-19).

Given the court's finding that SW-61-09 was legally issued and executed, the

physical evidence and statement recovered pursuant to SW-61-09 were

appropriately used to establish probable cause for SW-71-09.  The suspected image

of child pornography and Getgen's statement that there would be some

"borderline" images on his computers provided Judge Page with a substantial basis

for concluding that evidence of child pornography would be found on the

computers and electronic media previously seized from Getgen's residence.

### B.   <u>Good-Faith Exception</u>

Assuming *arguendo* SW-61-09 was improperly issued, the physical evidence

and Getgen's statement would still be admissible.  (See Doc. 32, at 12-16).  Not all

evidence acquired in violation of the Fourth Amendment must be excluded.

19

Herring v. United States, 555 U.S. 135, 140 (2009). In United States v. Leon, 468

U.S. 897 (1984), the Supreme Court articulated the good-faith exception to the

Fourth Amendment exclusionary rule. The Leon Court remarked that the

underlying purpose of the exclusionary rule—to deter wrongful police

conduct—would not be advanced by suppressing evidence obtained from the

execution of a search warrant "when an officer acting with objective good faith has

obtained a search warrant from a judge or magistrate and acted within its scope."

Leon, 468 U.S. at 920. The Leon Court emphasized that in most cases, a law

enforcement official "cannot be expected to question the magistrate's

probable-cause determination or his judgment that the form of the warrant is

technically sufficient." Id. at 921. Evidence will only be suppressed if application of

the exclusionary rule will help safeguard Fourth Amendment rights. Herring, 555

U.S. at 139. Consequently, the exclusionary rule is applied when law enforcement

conduct is "deliberate, reckless, or grossly negligent, or when it will deter recurring

or systemic negligence." Tracey, 597 F.3d at 151 (quoting Herring, 555 U.S. at 144)

(quotations omitted).

     The Third Circuit has identified four limited circumstances when the good-

faith exception is inapplicable to the Fourth Amendment exclusionary rule:

> 1. Where the magistrate issued the warrant in reliance on a
> deliberately or recklessly false affidavit;
>
> 2. Where the magistrate abandoned his or her judicial role and failed
> to perform his or her neutral and detached function;

3. Where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or

4. Where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

Tracey, 597 F.3d at 152 (quoting United States v. Zimmerman, 277 F.3d 426, 436-37 (3d Cir. 2002)).  None of these circumstances are present in the instant case.

The record is devoid of any evidence that Judge Page issued the warrant in reliance on a deliberately or recklessly false affidavit or abandoned his role judicial role.  Furthermore, Agent Bachman acted with objective good faith by relying on the determination of both First Assistant District Attorney Osokow and Judge Page that SW-61-09 was supported by probable cause, sufficiently particularized, and carefully tailored to its justifications.  See Tracey, 597 F.3d at 153 (remarking that the approval of a district attorney and a judge would give a reasonable officer confidence in the validity of warrant).  The defects in SW-61-09 alleged by Getgen involve at most negligent drafting errors, that, if material, relate to hypertehcnical constitutional intricacies that would not be fully appreciated by a nonlawyer. This is simply not case where the police conduct was "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." Herring, 555 U.S. at 139.

**III.**   **<u>Conclusion</u>**

For the foregoing reasons, the motion to suppress will be denied.

An appropriate order follows.

<u>  S/ Christopher C. Conner  </u>
CHRISTOPHER C. CONNER
United States District Judge

Dated:        November 18, 2011

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 4:11-CR-00125** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **RONNY GETGEN,** | : | |
| | : | |
| **Defendant** | : | |

## <u>ORDER</u>

AND NOW, this 18th of November , 2011, upon consideration of the motion

(Doc. 28) to suppress filed by defendant Ronny Getgen, and for the reasons stated in

the accompanying memorandum, it is hereby ORDERED that the motion (Doc. 28)

to suppress is DENIED.


   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge